UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LUIS P.A.,

Petitioner,

v.

CALIFORNIA CITY WARDEN,

Respondent.

No. 1:26-cv-04214-TLN-CSK

A # 245-558-600

**RELEASE ORDER**

This matter is before the Court on Petitioner Luis P.A.'s[1] ("Petitioner") Amended Petition for Writ of Habeas Corpus. (ECF No. 11.) Respondent filed an opposition.[2] (ECF No. 7.) For the reasons set forth below, Petitioner's habeas petition is GRANTED. (ECF No. 11.)

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] The amended habeas petition, filed by Petitioner's appointed counsel, does not raise new claims but instead provides updated facts. (*See* ECF No. 11 at 3–4.) The Court understands the arguments made in Respondent's Motion to Dissolve Do Not Transfer Order to be Respondent's position on the updated facts. (ECF No. 9 at 1–2.) Additionally, as Respondent's opposition to Petitioner's original pro se habeas petition states that Respondent does not request a hearing or additional affirmative briefing and does not oppose the Court ruling on the habeas petition without further briefing (ECF No. 7 at 1), the Court finds it appropriate to construe the filing as Respondent's opposition to the amended habeas petition.

1

Respondent's Motion to Dissolve Do Not Transfer Order is DENIED as moot.  (ECF No. 9.)

I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a noncitizen who entered the United States on December 5, 2023.  (ECF No. 7 at 18.)  Petitioner was apprehended by immigration authorities and released on his own recognizance two days later.  (*Id.* at 14, 16; ECF No. 7 at 14–16.)  In the time that followed, Petitioner lived in Rockford, Illinois, with his wife and five-year-old daughter.  (ECF No. 1 at 10.)  Petitioner has two other daughters who live in his country of citizenship and who depend on his income to survive.  (*Id.*)

On January 3, 2026, while on vacation with his family in Florida, Petitioner was arrested following an accusation of shoplifting.  (*Id.*)  According to the Panama City Police Department's incident report, Petitioner was accused of shoplifting food items, including shrimp and plantains, carrying a value of $56.16.  (ECF No. 7 at 24.)  The incident report also states that officers recovered drug paraphernalia and .36 grams of cannabis.  (*Id.* at 24–25.)  Respondent submits a RAP sheet showing Petitioner's arrest for two first degree misdemeanors and one second degree misdemeanor.  (*Id.* at 34–35.)  There is no information on the record as to whether charges were ultimately filed.  (*See generally* ECF No. 7.)  Petitioner had no criminal history prior to this incident.  (ECF No. 1 at 10.)  He was subsequently taken into custody by the U.S. Department of Homeland Security and transferred to the California City Immigration Processing Center.  (ECF No. 11 at 3.)

On June 2, 2026, Petitioner initiated these habeas proceedings challenging the lawfulness of his civil detention and seeking immediate release.  (ECF No. 1.)  The Court set a briefing schedule and ordered Respondent not to transfer Petitioner out of this district pending resolution of the habeas petition.  (ECF No. 4.)  On June 24, 2026, Petitioner was granted voluntary departure under safeguards to his country of citizenship and ordered to depart by October 22, 2026.  (ECF No. 9 at 6.)  Respondent subsequently filed a motion to dissolve the Court's "do not transfer" order, claiming Petitioner needs to be "transported to another district for staging and departure."  (*Id.* at 1.)  Petitioner has been detained over six months without an individualized determination of whether he poses a danger to the community or a flight risk.  (*Id.* at 4.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 11 at 7–8.)  In opposition, Respondent argues Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) or § 1225(b)(2).[3]  (ECF No. 7 at 2–6.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

---

[3]   Unless otherwise noted, citations to statute herein refer to Title 8 of the United States Code.

Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a protected liberty interest in his continued freedom.  The government's decision to release Petitioner on recognizance when he came to the United States in 2023 was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release.  *Morrissey*, 408 U.S. at 482.  Respondent does not claim Petitioner violated the terms of his release.  Furthermore, Petitioner has lived in the United States for nearly three years during which time he built a life in Illinois and supported his wife and children.  Petitioner has a clear liberty interest in his continued freedom protected by the Fifth Amendment.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions allowing petitioner to remain in the community for over five years strengthened his liberty interest).

Respondent's arguments on the applicability of §§ 1226(c) and 1225(b)(2) do not alter the Court's analysis.  The Court is unpersuaded by Respondent's argument that Petitioner is subject to mandatory detention under § 1226(c).  Section 1226(c) provides for mandatory detention of a noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]"  8 U.S.C. § 1226(c)(1)(E)(ii).  However, requiring mandatory detention for a mere arrest where prosecutors decline to press charges raises serious

due process concerns. *Singh v. Chestnut*, No. 1:26-CV-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) (noting the same). For that reason, courts have construed § 1226(c) to apply only where a noncitizen is currently charged with or arrested for the crimes listed in the statute. *Id.*; *see also Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025) (noting § 1226(c) "no longer requires mandatory detention when charges are resolved via acquittal or dismissal and none of the other clauses apply"). That is not the case here, where there is no information on the record showing Petitioner was charged with the misdemeanors for which he was initially arrested before being placed in civil immigration detention. The Court is therefore unpersuaded that § 1226(c) mandates Petitioner's detention. *See Daniel P.V. v. Warden, California City Corr. Ctr.*, No. 2:26-CV-01372-TLN-CKD, 2026 WL 1846736, at *3 (E.D. Cal. June 26, 2026) (finding the same on nearly identical facts); *Johalan David N.M. v. Warden of the California City Correctional Center, et al.*, No. 2:26-CV-01270-TLN-AC, 2026 WL 1846742, at *3 (E.D. Cal. June 26, 2026) (same).

As to Respondent's second argument, this Court and others throughout the Ninth Circuit have repeatedly rejected Respondent's position that § 1225(b)(2) applies to individuals like Petitioner who are detained while living in the United States as their immigration proceedings remain pending. *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). Respondent puts forth no new arguments or facts justifying a

different conclusion in this case.  Accordingly, the Court finds Petitioner is not subject to mandatory detention under § 1225(b)(2).  Petitioner maintains an interest in his continued liberty protected by the Due Process Clause.

B.    <u>Process Required</u>

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to and a custody or bond hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him.  Despite this interest, Petitioner has now been detained for over six months without any opportunity to be heard as to the justification for his detention.  Petitioner's private interest may be diminished slightly because he agreed to voluntary departure, but he is entitled to depart of his own accord in the timeline permitted by the immigration court.  An agreement to leave the country does not extinguish Petitioner's liberty while he is here.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is

6

reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondent does not argue Petitioner is a danger to the public or a flight risk. (*See generally* ECF No. 7.) Nor does Respondent argue Petitioner must be detained to effectuate the voluntary departure order. (*See generally* ECF No. 9.) While Respondent does now claim the government needs to transport Petitioner to another district for staging and departure, (ECF No. 9 at 1), as Petitioner points out:

> The actual barrier to departure is that [Petitioner] remains in detention and therefore lacks the ability to make his own travel arrangements, as voluntary departure under 8 U.S.C. § 1229c(a) expressly requires. Voluntary departure occurs at the noncitizen's own expense and through the noncitizen's own arrangements; it is not effectuated through an ICE-escorted transfer to a staging facility.

(ECF No. 12 at 2.) Thus, to the extent the government has an interest in effectuating Petitioner's voluntary departure order, that interest is not served by continuing Petitioner's detention. The risk that Petitioner is being detained without proper justification is therefore exceedingly high.

Finally, the government's interest in continuing to detain Petitioner without procedural protections is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Custody determination hearings are routine processes for Respondent. While the Court recognizes the government has an interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Indeed, Respondent sets forth no legitimate interest in continuing to detain Petitioner without such safeguards. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker to ensure his detention was justified. Respondent provided no such hearing over Petitioner's over six months of detention. Respondent therefore violated Petitioner's Fifth Amendment procedural due process rights.[4]

---

[4] Petitioner also challenges his detention as violating the Immigration and Nationality Act and the Suspension Clause. (ECF No. 11 at 5–8.) As the Court concludes Petitioner's detention violates the Fifth Amendment, the Court need not address Petitioner's additional claims.

## IV.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1.    Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 11) is GRANTED.

2.    Respondent must IMMEDIATELY RELEASE Petitioner Luis P.A. (A # 245-558-600) from custody.  At the time of release, Respondent must provide a copy of this Order to Petitioner and return all of Petitioner's documents and possessions.  **Respondent must file a notice of compliance with this Order within two court days.**

3.    Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that the government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention.  *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

4.    Respondent's Motion to Dissolve Do Not Transfer Order (ECF No. 9) is DENIED as moot.

5.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 7, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8